**IN THE CIRCUIT COURT FOR ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| **MELANIE HIEDGER,** *individually and on behalf of all others similarly situated,* | ) ) ) ) Case No. _____ |
| **Plaintiffs,** | ) ) ) |
| v. | ) **JURY TRIAL DEMANDED** ) ) |
| **THE COCA-COLA COMPANY, DOES 1 through 10,** | ) ) ) ) |
| **Defendants.** | ) |

**CLASS ACTION PETITION**

Plaintiff Melanie Heidger, individually and on behalf of all others similarly situated, hereby files this Class Action Petition against Defendant The Coca-Cola Company ("CCC") and DOES 1 through 10 (collectively "Defendants") for their false, misleading, and deceptive marketing of their products constituting breach of warranty, breach of implied contract, and unjust enrichment, and, in the state of Missouri, violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

**I.     INTRODUCTION**

1. Defendant CCC markets and sells consumer food and beverage products, including an alcoholic beverage described as "Margarita - Hard Seltzer" under the Topo Chico brand (the "Product").

2. Margaritas contain tequila, and consumers expect tequila to be in a margarita. Every common definition of "margarita," including Wikipedia and the International Bartenders Association ("IBA"), recognizes that it is a cocktail made with tequila. Indeed, tequila is the signature component of the margarita.

3. Nonetheless, the Product – despite being advertised as "Margarita" hard seltzer and

prominently claiming its 4.5% alcohol content, surprisingly contains no tequila whatsoever.

4.  The Product prominently advertises that its contents are margaritas.



a.

5.  As illustrated, the outer box of the Product claims to contain "Margarita Hard Seltzer," that is 4.5% alcohol.

6.  In addition, the backdrop of the outer box is a yellow-tinted field of agave plants – the source crop for tequila.

7.  Inside the box, each of the containers purports to contain "Margarita Hard Seltzer" in four different varieties, including "Signature Margarita."



a.

8.  Despite all of these claims to contain "margarita," a drink universally known to contain tequila, the Product has no tequila whatsoever, and instead includes just "agave syrup" and generic, cheaper-sourced "alcohol."

2

9. None of this meets the consumer's expectation. This conduct is deceptive, misleading and unfair to consumers.

10. Pursuant to the MMPA and the similar laws of various states, such practice is illegal.

11. In addition, and/or in the alternative to the above, since the initial offering of the Products, each and every container of the Products has borne a uniformly-worded label falsely claiming the Products contain "Margarita Hard Seltzer" despite containing no tequila, the most crucial component of a margarita. Accordingly, that uniformly-worded false statement gives rise to additional and/or alternative claims under Missouri law.

## II.   PARTIES, JURISDICTION, AND VENUE

12. Plaintiff Melanie Heidger is a citizen and resident of St. Louis County, Missouri.

13. Plaintiff brings this Class Action Petition individually and on behalf of a putative class of Missouri citizens, and only Missouri citizens.

14. Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Fulton County, Georgia.

15. Defendant CCC, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of Missouri. CCC is the owner, manufacturer, and distributor of the Products, and is the organization that created and/or authorized the false, misleading, and deceptive packaging of the Products.

16. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

17. Venue is proper in this Court because Plaintiff was injured in this venue and lives within

Electronically Filed - St Louis County - February 15, 2023 - 05:13 PM

this venue.

18. This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA. Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable. This action raises questions of law and fact common among Plaintiffs. The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

19. <u>Class definitions</u>: Plaintiff Melanie Heidger brings this action on behalf of herself and a class of similarly-situated Missouri citizens preliminarily-[1]defined as follows: All Missouri citizens who purchased the Products[2] during the Class Period in Missouri. The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition. Excluded from the Class and Subclass are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

20. <u>Numerosity</u>: Upon information and belief, the Class includes thousands of individuals on

---

[1] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.
[2] As that term and label is defined herein.

4

Electronically Filed - St Louis County - February 15, 2023 - 05:13 PM

a statewide basis, making their individual joinder impracticable. Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

21.   <u>Typicality</u>: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive marketing and advertising in offering and selling the Products to Plaintiffs.

22.   <u>Adequacy</u>:   Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent and experienced counsel, and she intends to prosecute this action vigorously. The interests of the Class will be protected fairly and adequately by Plaintiff and her counsel.

23.   <u>Commonality</u>:  Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Products; (b) whether and to what extent the Class members were injured by Defendant's illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to declaratory relief; and (e) whether the Class members are entitled to injunctive relief.

24.   <u>Superiority</u>:  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct. Thus, it would be extremely difficult for the individual Class members to obtain effective relief. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

### III. BACKGROUND

25. As stated, Defendant CCC markets and sells the "Margarita - Hard Seltzer" product under the Topo Chico brand (the "Product").

26. Margaritas contain tequila, and consumers expect tequila to be in a margarita.

27. Merriam-Webster dictionary defines a "margarita" as "a cocktail consisting of tequila, lime or lemon juice, and an orange-flavored liqueur."

28. Wikipedia, likewise, defines a "margarita" as "a cocktail consisting of tequila, orange liqueur, and lime juice[.]"

29. The IBA, as mentioned previously, defines a "margarita" as a classic cocktail made with tequila.

30. Nonetheless, the Product – despite being advertised as "Margarita" hard seltzer and prominently claiming its 4.5% alcohol content – contains no tequila whatsoever.

31. The Product could not more clearly or prominently advertise that its contents are "margaritas."



a.

32. As illustrated, the Product's boxing prominently states that it contains "Margarita Hard Seltzer," that is 4.5% alcohol, and its backdrop is a yellow-tinted field of tequila's source crop, agave.

33. Inside the box, each of the containers purports to contain "Margarita Hard Seltzer" in four different varieties, including "Signature Margarita."



b.

34. Moreover, the term "hard seltzer" enhances the consumer's expectation that the Product contains tequila. The term "hard" in the context of alcohol refers to distilled spirits, i.e., "hard liquor."

35. Despite all of these indicators that the Product contains "margarita," a drink universally known to contain tequila, the Product has no tequila whatsoever.

36. Not only does this conduct in-and-of-itself betray the consumer's expectations, but especially in comparison to competitor products, the Product is deceptive.

37. This is because ready-to-drink ("RTD") margarita beverages that **do** contain tequila are sold by competitor brands like BuzzBox, CutWater and Dulce Vida, as shown in the following examples:



a.

38. All three of these similar competitor products contain tequila. Clearly, placing tequila in a "margarita" product is not technologically or commercially unfeasible.

39.     Yet, nonetheless, as the small-print ingredient list on the backside of the Product reveals, the Product contains generic "alcohol" and "agave syrup" in place of actual tequila.

    a.   SIGNATURE MARGARITA: INGREDIENTS: FILTERED CARBONATED WATER, ALCOHOL, LIME JUICE FROM CONCENTRATE, AGAVE SYRUP, CITRIC ACID, NATURAL FLAVORS, SALT*, SODIUM CITRATE, SUCRALOSE, MAGNESIUM CHLORIDE*, POTASSIUM CHLORIDE*. (*MINERALS FOR TASTE)

40.     Instead of listing the alcohol source from a fermented sugar base, the ingredients list only "alcohol."

41.     Defendant is taking advantage of consumers with this deceptive practice.

42.     The average consumer spends less than 20 second making any individual in-store purchasing decision.³ That decision hinges almost entirely on the product's front labeling because the average consumer does not have the time – while presumably on a schedule and surrounded by multiple other consumers – to inspect the small font on the rear of a Product to determine whether it tends to support and/or refute a prominent claim, such as a claim to contain margarita.

43.     Thus, a consumer is deceived despite what ingredients may be listed on the back-side small-print of a product. Consumers' ability to interpret nutrition label information on the back of products is relatively poor; thus, the prominent labels typically featured on the front packaging are particularly important to a consumer's purchasing decision.⁴

---

³ Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 13, 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-windown/ (citing *Shopping Takes Only Seconds… In-Store and Online*, EHRENBERG-BASS INSTITUTE OF MARKETING SCIENCE (2015)) (last visited January 27, 2023).

⁴ Lisa M. Soederberg Miller and Diana L. Cassady, *The Effects of Nutrition Knowledge of Food Label Use: A Review of the Literature,* 92 APPETITE 207 (2015); A B Marietta, et al., *Knowledge, Attitudes,*

8

44. In addition to all the above, the Product is also deceptive in labeling itself "hard seltzer," because it does not contain distilled spirits at all, but is made from a fermented sugar base, and would be more-appropriately referred to as a beer.

45. Moreover, the Topo Chico label is misleading because the Product does not contain the sparkling mineral water sourced in Monterrey, Mexico, which is the hallmark of Topo Chico beverages.

46. All of this conduct is deceptive and violates the laws of Missouri and various other states.

47. The Products' labels are deceptive and misleading in violation of the Missouri Merchandising Practice Act, and various other Missouri laws.

48. Defendant knows that consumers are willing to pay more for products made with real tequila, and Defendant advertises and sells the Products with the intention that consumers rely on the representation made on the front of the Products' packaging.

49. Plaintiff and other consumers purchased the Products due to their belief that the Products contain tequila.

50. Plaintiff and the Class made their purchasing decisions in reliance upon Defendant's advertised claims that that Products contain margaritas, which must contain tequila.

51. Plaintiff and the Class reasonably and detrimentally relied upon the Products' front labels indicating that the Products are "Margarita Hard Seltzer."

52. Plaintiff and the Class would not have purchased the Products had they known that the Products are not made with tequila.

53. Defendant's conduct threatens Missouri consumers by using false, deceptive, and misleading labels. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition, has a negative impact on the marketplace, and

---

*and Behaviors of College Students Regarding the 1990 Nutrition Labeling Education Act Food Labels,* 99 J. Am. Diet Ass'n 445 (1999).

reduces consumer choice.

54. There is no practical reason for the false or misleading labeling and advertising of the Products, other than to mislead consumers as to the actual ingredients in the Products being purchased by consumers while simultaneously providing Defendant with a financial windfall.

### *Allegations Relating to All Plaintiffs*

55. As noted, supra, since the initial offering of the Products, the containers on the front packaging of all of the Products has borne uniformly-worded labels falsely claiming the Product is "Margarita Hard Seltzer" (the "False Claims"). Because, *inter alia,* the Product does not contain any tequila and/or is not hard seltzer, the "False Claims" are deceptive.

56. In reality, for all the reasons set forth supra, a reasonable consumer would find that the False Claims are false, misleading, unfair, and/or deceptive.

57. Defendant, as the producer and exclusive seller and distributor of the Products, has been aware since the Products' inception, that the False Claims are in fact false.

58. Despite this, Defendants purposely made the False Claims in order to induce the false belief in consumers that they were purchasing margaritas with tequila.

59. Plaintiff and the class members purchased the Products without being aware that the Products are not, in fact, made with tequila.

60. Defendant possessed specialized knowledge regarding the origin and production of the Products and their clams.

61. In purchasing the Products, Plaintiff and the class justifiably relied upon the False Claims as accurate.

62. Had Plaintiffs known that the False Claims were false, Plaintiffs would not have purchased the Products or would not have paid as much for the Products.

63. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with

the assurance the Product's representations are consistent with its actual composition.

64. As the direct and proximate result of the False Claims, Plaintiff and the class members have suffered economic injury by being deprived of the benefit of the bargain they were promised by Defendant.

65. By marketing, selling and distributing the Product to purchasers in Missouri, Defendant made actionable statements that the Products were made with tequila, but at all times failed to reasonably disclose that the Products were not.

66. Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

67. Alternatively, Defendant was reckless in not knowing that the False Claims were false and misleading at the time they were made.

68. As the distributor, marketer, producer, and seller of the Products, Defendant possessed specialized knowledge regarding the contents of the Products which the Plaintiff and the class members could not and did not review.

69. All of Plaintiffs' claims are based on misleading statements that violate FDA regulations. Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

*Facts Particular to Plaintiff Melanie Heidger*

70. Plaintiff purchased the Product at one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart in St. Louis County, Missouri – 2201 Michigan Ave., 63010.

71. Due to the claims on the packaging, Plaintiff falsely believed she was purchasing margaritas containing tequila.

72. Plaintiff thereafter purchased the Product. Plaintiff purchased the Product for Plaintiff's personal, family and household use.

73. At the time she purchased the Product, Plaintiff was unaware of the falsity of the Products' claims.

74. She discovered that such claims were false shortly after purchasing the Product.

75. If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, she would not have bought the Product.

76. When Plaintiff purchased the Product, she was injured by Defendant's illegally deceptive, false, and misleading conduct in marketing and selling the Product.

77. Specifically, Plaintiff suffered an ascertainable loss because she did not receive the expected benefit of her bargain.

78. When Plaintiff was purchasing the Product, due to the false claims upon the Product, Plaintiff believed that she was purchasing a Product made with real butter.

79. The Product was not what it was purported to be. Plaintiff did not receive the value of what she bargained for; instead Plaintiff received a product that did not live up to one of its most-prominently advertised features.

80. Consequently, Plaintiff was damaged in the amount of the difference between the cost paid for the Product as represented and the actual value of the products.

81. Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed Class, all that is relevant is that Plaintiff and the class members, Missouri citizens, each and all purchased the Products at a time within the Class Period while in Missouri.

## CAUSES OF ACTION

## COUNTS RELATING TO THE MISSOURI CLASS

### COUNT ONE: BREACH OF WARRANTY UNDER MISSOURI LAW

82. Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Class Action Petition.

83. Defendant sold the Product in its regular course of business. Plaintiff and the class members purchased the Product.

84. Defendant made promises and representations in an express warranty provided to all consumers, namely the False Claims.

85. The False Claims became the basis of the bargain between the Defendant and Plaintiff and each class member.

86. Defendant gave these express warranties to Plaintiff and each class member in written form on the labels of the Product.

87. Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty under Missouri law.

88. Defendant breached the warranty because the False Claims were false.

89. The False Claims were false when the sales took place and were undiscoverable to Plaintiff and the class members at the time of purchase.

90. All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the Product.

91. Defendant had actual notice of the false labeling information and to date has taken no action to remedy its breach of express and implied warranty.

92. Defendant previously knew or should have known of the falsity of the False Claims on

13

Electronically Filed - St Louis County - February 15, 2023 - 05:13 PM

the Product due to, inter alia, Defendant's knowledge of the Product.

93. Defendant has nonetheless refused to remedy such breaches.

94. By placing the Product in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also impliedly warrantied to Plaintiff and the class members that the Products were accurately labeled in conformance with the law.

95. Defendant's breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and class members have suffered damages and continue to suffer damages.

96. As a result of Defendant's breach of these warranties, Plaintiff and class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relied as deemed appropriate, in an amount sufficient to compensate them for not receiving the benefit of their bargain.

**COUNT TWO: BREACH OF IMPLIED CONTRACT UNDER MISSOURI LAW**

97. Plaintiff repeats and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

98. By operation of law, there existed an implied contract for the sale of the Product between Defendant and Plaintiff and each class member who purchased the Product.

99. By operation of Missouri law, there existed an implied duty of good faith and fair dealing in each such contract.

100. By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

101. As a result of that breach, Plaintiff and each class member suffered damages.

**COUNT THREE: UNJUST ENRICHMENT UNDER MISSOURI LAW**

Electronically Filed - St Louis County - February 15, 2023 - 05:13 PM

102. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

103. Plaintiffs plead their claim for relief in the alternative to the contract claims set forth above.

104. Plaintiff and the class members have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willfully accepted and enjoyed those benefits.

105. Defendant either knew or should have known that the payments rendered by Plaintiff and the class members were given and received with the expectation that the Product would be as represented and warranted. For Defendant to retain the benefit of the payments under these circumstances is inequitable.

106. Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Products, including the False Claims, Defendant reaped benefits, which result in Defendant wrongfully receiving profits.

107. Equity demands disgorgement of Defendant's ill-gotten gains. Defendant will be unjustly enriched unless Defendant is ordered to disgorge the unjustly obtained portion of profits for the benefit of Plaintiff and the class members.

108. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the class members are entitled to restitution from Defendant and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct.

**COUNT FOUR: VIOLATION OF THE MMPA – Misleading, False, and Deceptive Marketing**

109. Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Class Action Petition, as though fully set forth herein.

110. Defendant's acts complained of herein occurred in and emanated from the State of

Missouri.

111. Plaintiff and all members of the Class are "persons" and the Products are "merchandise" as those terms are defined under the MMPA.

112. As set out in this Petition, Defendant's marketing of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

113. As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Products they were purchasing were made with real butter.

114. Defendant's deceptive acts caused Plaintiff and the Class Members an ascertainable loss within the meaning of the MMPA.

115. Due to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

116. Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order certifying this action as a Missouri class action and appointing Plaintiff Melanie Heidger as Class representative and her counsel as class counsel. Plaintiff requests that this court find that the Defendant is liable pursuant to the aforementioned Missouri common law claims; and/or violated the MMPA, and award Plaintiffs compensatory damages, restitution, and attorneys' fees, and such further relief as the Court deems just, including injunctive relief.

Electronically Filed - St Louis County - February 15, 2023 - 05:13 PM

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*