## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| MELANIE HIEDGER, on behalf of herself and other members of the putative class, )<br><br>Plaintiff, )<br>v. )<br><br>THE COCA-COLA COMPANY, et al., )<br><br>Defendants. ) | Case No. 4:23-cv-00349-SEP |

MELANIE HIEDGER, on behalf of herself
and other members of the putative class,          )
                                                  )
         Plaintiff,                               )
v.                                                )   Case No. 4:23-cv-00349-SEP
                                                  )
THE COCA-COLA COMPANY, et al.,                    )
                                                  )
         Defendants.                              )

### MEMORANDUM AND ORDER

Before the Court is Plaintiff Melanie Hiedger's Motion to Remand Case to State Court. Doc. [10].  For the reasons set forth below, the motion is denied.

### BACKGROUND

Plaintiff brought this class action in state court against Defendants The Coca-Cola Company (Coca-Cola) and Does 1 through 10, alleging breach of warranty, breach of implied contract under Missouri law, unjust enrichment under Missouri law, and violations of the Missouri Merchandising Practices Act (MMPA).  Doc. [1-1].  Plaintiff alleges that Coca-Cola engaged in false, misleading, and deceptive practices in marketing and selling "Topo Chico," a branded alcoholic beverage described as "Margarita – Hard Seltzer" (the Product).  *Id.* ¶¶ 1-11. According to Plaintiff, the Product's label claims to contain "Margarita Hard Seltzer," a "drink universally known to contain tequila," yet it contains no tequila.  *Id.*  Plaintiff seeks compensatory damages, restitution, attorneys' fees, and "such further relief as the Court deems just, including injunctive relief" on behalf of a putative class of consumers who purchased the Product over a five-year period in Missouri.  *Id.* at 16.  Coca-Cola removed the case to this Court on March 20, 2023.  *See* Doc. [1].  On March 23, 2023, Plaintiff moved to remand, Doc. [10], arguing that jurisdiction is improper because Coca-Cola has not met the amount-in-controversy requirement.  The motion is fully briefed and ripe for disposition.  *See* Docs. [13], [14].

### LEGAL STANDARD

Removal of a civil action is proper if "the district courts of the United States have original jurisdiction" over the action.  28 U.S.C. § 1441(a).  The Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), provides this Court "with 'original jurisdiction' to hear a 'class

action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018) (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)).

"The party seeking removal under CAFA bears the burden of establishing these jurisdictional requirements by a preponderance of the evidence." *Dammann v. Progressive Direct Ins. Co.*, 856 F.3d 580, 583 (8th Cir. 2017). "Under the preponderance standard, the jurisdictional fact is not whether damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are." *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009) (internal quotation omitted). "There is no presumption against federal jurisdiction in class action cases, and 'if the notice of removal plausibly alleges,' and the evidence shows, that the case *might* be worth more than $5 million (excluding interest and costs), 'then it belongs in federal court.'" *Brunts v. Walmart, Inc.*, 68 F.4th 1091, 1094 (8th Cir. 2023) (quoting *Leflar v. Target Corp.*, 57 F.4th 600, 603 (8th Cir. 2023) (emphasis in original)). "A removing defendant can establish federal jurisdiction with 'specific factual allegations . . . combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations.'" *Id.* (quoting *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017)). "District courts must accept the allegations in the notice if they are made in good faith." *Leflar*, 57 F.4th at 604. If "the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Bell*, 557 F.3d at 956.

**DISCUSSION**

## I.   <u>Defendant has shown by a preponderance of the evidence that the jurisdictional minimum is met in this case.</u>

Plaintiff argues that Coca-Cola "has failed to provide specific facts or evidence to prove . . . that the amount in controversy exceeds $5 million." Doc. [10] at 1. Specifically, Plaintiff takes issue with the estimate of Daniel White, Coca-Cola's Chief of New Revenue Streams, that compliance with the injunction sought by Plaintiff would cost Coca-Cola approximately $12,800,000. Doc [10] ¶¶ 5-6 (citing Doc. [1] ¶ 35). Coca-Cola based that number on "what must be a *nationwide* recall and re-label of all Defendant's Products," Plaintiff claims, but the company failed to demonstrate "why all of those acts must be done in 49 of the 50 states that would not be subject to any proposed injunction." *Id.* In response, Coca-Cola filed

an additional declaration from White attesting that, for a variety of reasons, it would be "infeasible for units of the Products with one label to be sold in Missouri, but with a different label in every other U.S. state," and thus the injunction sought by the Plaintiff would necessitate a nationwide recall and relabel of the Products.  Doc. [13-1] at 2-3.  Based on the notice of removal and its accompanying declarations, Coca-Cola maintains that the relief demanded in the Complaint would cost it substantially more than $5 million.  Doc. [13] at 2.

By Coca-Cola's own estimation, sales of the Product during the relevant period would total approximately $642,000.  *See* Doc. [1] at 7.  Attorneys' fees are also included in the jurisdictional amount, *Faltermeier v. FCA US LLC*, 899 F.3d 617, 622 (8th Cir. 2018), and Defendant notes that fees of around 33% are often awarded in MMPA cases.  *Id*. at 8.  Damages in the amount of $642,000 plus 33% in attorneys' fees would total approximately $853,000—far below the jurisdictional amount.  *See* Doc. [1] at 7-8.  Thus, whether Coca-Cola has met the CAFA amount-in-controversy requirement turns on whether the value of the injunctive relief sought by Plaintiff exceeds approximately $4,147,000.  *See American Tiger Firearms, LLC v. Facebook Inc.,* 2019 WL 7833951, at *1 (E.D. Ark. 2019).  And that depends on the answer to another question, which the Eighth Circuit has yet to answer:  In the CAFA context, must a court evaluate the amount in controversy from the plaintiff's perspective, or may it consider what the requested relief will cost a defendant?  *See Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017) ("We need not resolve the issue of whether courts should apply the plaintiffs' viewpoint rule or the either viewpoint rule when determining the amount in controversy under CAFA . . .."); *see also Helterbrand v. Procter & Gamble Co.*, 2021 WL 8202680, at *3 (E.D. Mo. Sept. 22, 2021) ("[I]n non-CAFA cases, the Eighth Circuit has adopted the plaintiff's viewpoint rule," but "it is not clear what rule applies in CAFA cases.").

Although this Court has never taken a position on the issue, it has noted elsewhere the "strong arguments in favor of adopting the either-party-viewpoint rule in assessing the value of injunctive relief in a CAFA case," and it will not rehearse them here.  *McKinnon v. Restoration Hardware, Inc.*, No. 4:21-CV-00605-SEP, 2022 WL 970882, at *3-*4 (E.D. Mo. Mar. 31, 2022).  Since that analysis, the Eighth Circuit still has not taken a position, but certain sister district courts *have* taken prospective costs to defendants of nationwide relabeling and product recalls into account when determining amounts in controversy under CAFA.  *See, e.g.*, *Bell v. Walgreens Boots All., Inc.*, 2022 WL 17987039, at *3 (E.D. Mo. Dec. 29, 2022) ("Given the

3

nature of his claims, Plaintiff's request for injunctive relief would necessarily involve a nationwide relabeling campaign and product recall . . . ."); *Dedloff v. Target Corp.*, 2022 WL 5241807, at *3 (E.D. Mo. Oct. 6, 2022) (accepting Defendant's argument that Plaintiff's injunctive relief would require a nationwide product recall and relabeling claim, "which alone would far exceed the $5 million jurisdictional minimum."); *see also Toller v. Sagamore Ins. Co.*, 558 F.Supp.2d 924, 930-31 (E.D. Ark. 2008) (noting the controversy around the either-party-viewpoint rule, and concluding that "the value of injunctive relief should probably be considered from either the plaintiffs' or the defendant's point of view," and holding that CAFA's amount-in-controversy requirement was met when calculated "from the vantage point of the defendant").

Additionally, though the Eighth Circuit did not explicitly adopt the either-party-viewpoint rule in *Leflar v. Target,* it implicitly approved considering a defendant's perspective regarding its potential aggregate compliance costs if plaintiffs were to prevail. *Leflar,* 57 F.4th at 605. In *Leflar*, the Eighth Circuit reviewed a remand order where the central issue on appeal was whether the district court erred by failing to consider a declaration submitted by Target alleging that the CAFA amount-in-controversy threshold was met because the corporation would have to spend over $7.5 million in compliance costs if the plaintiff won. *Id*. The Eighth Circuit reversed and remanded, holding that the district court erroneously refused to consider evidence of Target's compliance-cost estimates, noting that the declaration constituted post-removal evidence that "shed[] light" on the amount in controversy, and that it should have been considered by the court. *Id*. Considering *Leflar*, the Court is persuaded that the Eighth Circuit is at least open to district courts utilizing the "either viewpoint" rule. In light of that, and for the reasons articulated in *McKinnon*, the Court joins its sister courts in adopting the "either viewpoint" rule and will consider the costs to Coca-Cola of complying with the injunction sought by Plaintiff, provided those costs are sufficiently substantiated.

Coca-Cola's estimated costs of compliance are sufficiently substantiated here. This case is unlike *Waters v. Ferrara Candy Company*, where the Eighth Circuit found that the defendant's affidavits were insufficiently specific to establish the amounts claimed by a preponderance of the evidence. *See* 873 F.3d at 636 (noting that the defendant's affidavits failed to articulate what injunctive relief would require of the company). Here, Coca-Cola's representative stated that if the Court granted injunctive relief, Coca-Cola would be forced to recall and destroy existing inventory of the Products, remove or substantially modify references to the challenged

statements from packaging and labels and redesign the packages and labels, and remove challenged statements from media sources and other advertising. *See* Docs. [1-2], [13-1]. He provided detailed information explaining how he determined that the potential costs of such an injunction would be between $12 and $13 million. *Id*. For example, White described how the Products are sold in bulk to regional and national distributors, who in turn sell the Products throughout the country. Doc. [13-1] at 2. Because the distributors sell the Products across multiple states, White explained, Defendant would be unable to ensure that any particular state would not receive any Products with pre-injunction labels. *Id*. In light of that, an injunction would cause the recall and destruction of the approximately 593,000 cases of existing inventory with pre-injunction labels, which he estimates would cost approximately $11,907,589. *Id*. He further indicates that at any given time retailers hold between $1,000,000 and $2,122,519 worth of the Products, which would also need to be recalled and destroyed. *Id*. at 4. And he states that because the Products are marketed nationally, Defendant would need to design and create new labels and review and revise its national marketing plan, which he estimates would cost approximately $150,000. *Id*.

The Court concludes that White's sworn declarations are sufficient to establish by a preponderance of the evidence that the cost of injunctive relief, and thus the amount in controversy, exceeds $5 million. *See Brunts*, 68 F.4th at 1094 ("A removing defendant can establish federal jurisdiction with 'specific factual allegations . . . combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations.'") (quoting *Waters*, 873 F.3d at 636).

This conclusion is only bolstered when the likely costs of injunctive relief are considered in combination with compensatory damages and attorneys' fees. *See Faltermeier*, 899 F.3d at 621-22 (affirming "that it was more likely than not that attorneys' fees" would be substantial, "considering the expected length of the litigation, the risk and complexity involved in prosecuting class actions, and the hourly rates charged"); *see also Diesel v. Procter & Gamble Co.*, 2022 WL 16948290, at *2 (E.D. Mo. Nov. 15, 2022); *Bell,* 2022 WL 17987039, at *3 (E.D. Mo. Dec. 29, 2022); *Muller v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2022 WL 17718628, at *3 (E.D. Mo. Dec. 15, 2022); *Heidger v. Bayer Corp.*, 2023 WL 2951620, at *3 (E.D. Mo. Apr. 14, 2023).

## II.   **Plaintiff has not shown to a legal certainty that the claims are for less than the requisite jurisdictional amount.**

Because Coca-Cola has shown that this case meets CAFA's jurisdictional minimum amount in controversary, the case belongs in federal court unless Plaintiff "can establish to a legal certainty that the claim is for less than the requisite amount." *Bell*, 557 F.3d at 956; *see also Raskas*, 719 F.3d at 888 ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.") (internal quotation omitted).  "Even if it is highly improbable that [Plaintiff] will recover the amounts [Coca-Cola has] put into controversy, this does not meet the legally impossible standard." *Raskas*, 719 F.3d at 888.

Plaintiff attempts to carry her burden by criticizing Defendant's injunctive relief calculations and claiming that she "never requested any sort of . . . injunctive relief granted on a *nationwide* basis." Doc. [14] at 1.  But Plaintiff fails to submit any countervailing evidence to support her challenge.  *See Waters v. Home Depot USA, Inc.*, 446 F. Supp. 3d 484, 492 (E.D. Mo. 2020) ("plaintiff's challenge [must] have a supportive evidentiary basis for which to challenge [Defendant's] allegations; simply second-guessing a removing defendant's allegations is insufficient.")  Accordingly, Plaintiff has not shown that it is legally impossible for the putative class to recover more than $5 million.

### CONCLUSION

Because Coca-Cola has shown by a preponderance of the evidence that the amount in controversy exceeds CAFA's jurisdictional minimum, the Court has jurisdiction over this case under 28 U.S.C. § 1332(d), and remand must be denied.  *See Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1060 (8th Cir. 2020) ("Once a federal court determines it has jurisdiction over a case properly before it, it has a virtually unflagging obligation to exercise it.")

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Melanie Hiedger's Motion to Remand Case to State Court, Doc. [10], is **DENIED**.

Dated this 6th day of February, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE